Redacted Version

Robin L. Cohen (rcohen@kasowitz.com)
Burt M. Garson (bgarson@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------- X

EDUARDO LI,                                          :

         Plaintiff,                          :          1:15-CV-06099 (RJD-JO)

   -against-                                       :

CERTAIN UNDERWRITERS AT LLOYD'S,          :
LONDON, AXIS SPECIALTY EUROPE SE;

       Defendants.                     :

-------------------------------------- X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION**
<u>**REQUIRING DEFENDANTS TO PAY DEFENSE COSTS**</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 4

I.   DEFENDANTS HAVE FAILED TO REBUT MR. LI'S SHOWING THAT HE IS
     ENTITLED TO ADVANCEMENT OF DEFENSE COSTS ........................................... 4

     A.   The Rapidly-Eroding Federal Policy Does Not Negate Mr. Li's Showing Of The
          Threat of Irreparable Harm ................................................................................ 4

     B.   Defendants' Own Arguments Confirm That Mr. Li Is Likely To Prevail On His
          Claim For Defense Costs .................................................................................... 8

II.  DEFENDANTS' PROCEDURAL MACHINATIONS CANNOT DEFEAT MR. LI'S
     RIGHT TO RELIEF .................................................................................................. 11

     A.   This Court Can And Should Exercise Supplemental Jurisdiction
          Over This Action ............................................................................................... 12

     B.   Defendants' *Forum Non Conveniens* Defense Cannot Defeat This Motion............ 14

          1.   The Policy Forum Selection Clause Is Not Binding On Mr. Li.................. 19

          2.   Mr. Li's Motion Should Not Be Denied Based On Common Law
               *Forum Non Conveniens* ............................................................................19

CONCLUSION................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC*, 2012 U.S.
    Dist. LEXIS 21739 (S.D.N.Y. 2012) ...................................................................17

*Baxter Int'l v. AXA Versicherung AG*,
    908 F. Supp. 2d 920 (N.D. Ill. 2012) ..................................................................19

*Bigio v. Coca–Cola Co.*,
    No. 97 CIV. 2858, 2010 WL 3377503 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675
    F.3d 163 (2d Cir. 2012)........................................................................................15

*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*,
    No. 14-CV-04717(FB)(CLP), 2015 WL 1182764 (E.D.N.Y. Mar. 13, 2015) ......................22

*In re Cinar Corp. Sec. Litig.*,
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) (Dearie, J.) .............................................20

*Citi Structure Constr. v. Zurich Am. Ins. Co.*,
    2015 U.S. Dist. LEXIS 108985 (S.D.N.Y. Aug. 18, 2015)..................................18

*Coreck Maritime GmbH v Handelsveem BV and Others*,
    ECJ Case No. C-387/98, ECR I-9337 (2000) .........................................................18

*Deutsche Bank AG & ORS v. Asia Pacific Broadband Wireless Communications
Inc. & ANR*, [2008] EWCA Civ. 1091 (U.K. Court of Appeal) ...............................................17

*Estasis Salotti di Colzani Aimo et Gianmario Colzani v Rüwa Polstereimaschinen
GmbH.*, ECJ Case No. 24-76, ECR 1831 (1976)........................................................17

*Federal Insurance Co. v. Kozlowski*,
    792 N.Y.S.2d 397 (N.Y. App. Div. 2005) ...........................................................9

*Fermin v. Moriarty*,
    No. 96-cv-3022, 2003 WL 21787351 (S.D.N.Y. Aug. 4, 2003).............................12

*Grand River Enter., Six Nations, Ltd. v. Prior*,
    481 F.3d 60 (2d Cir. 2007)........................................................................................5

*Gray v. Zurich Ins. Co.*,
    419 P.2d 168 (Cal. 1966) ..........................................................................................7

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001)...................................................................................19, 20

*In re Lloyd's Am. Trust Fund Litig.*,
  954 F. Supp. 656 (S.D.N.Y. 1997) ..........................................................................21

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013)..................................................................................17

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014)............................................................................14, 15

*Mazuma Holding Corp. v. Bethke*,
  1 F. Supp. 3d 6 (E.D.N.Y. 2014) ...........................................................................18

*Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*,
  282 F.R.D. 54 (S.D.N.Y. 2012) .............................................................................21

*N.Y. Land Co. v. Republic of Philippines*,
  634 F. Supp. 279 (S.D.N.Y. 1986) ........................................................................14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)...............................................................................................20

*QBE Ins. Corp. v. Pub. Serv. Mut. Ins. Co.*,
  102 A.D.3d 442 (1st Dep't 2013) ..........................................................................22

*Republic of the Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) ..............................................................................14

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
  422 N.E.2d 518 (N.Y. 1981)....................................................................................7

*Sash v. Schwartz*,
  No. 04-cv-9634, 2007 WL 30042 (S.D.N.Y. Jan. 4, 2007) ...................................12

*Société Financière et Industrielle du Peloux v. Axa Belgium, et al.*,
  ECJ Case No. C-112/03, ECR I-3707 (2005) ....................................16, 17, 18, 19

*Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*,
  352 N.E.2d 139 (N.Y. 1976)....................................................................................7

*Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*,
  No. 13 Civ. 742(DLC), 2014 WL 1378127 (S.D.N.Y. Apr. 8, 2014) ...................22

*Stein v. KPMG, LLP*,
  486 F.3d 753 (2d Cir. 2007)...................................................................................13

*Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  No. 15 Civ. 6639(CM), 2015 U.S. Dist. LEXIS 126611
  (S.D.N.Y. Sept. 17, 2015)....................................................................................7, 8

*United States v. Afremov*,
611 F.3d 970 (8th Cir. 2010) .......................................................................13

*United States v. Polishan*,
19 F. Supp. 2d 327 (M.D. Pa. 1998) ...........................................................13

*United States v. Weissman*,
No. 94-cr-760, 1997 WL 334966 (S.D.N.Y. June 16, 1997).............................12, 13

*In re WorldCom, Inc. Securities Litigation*,
354 F. Supp. 2d 455 (S.D.N.Y. 2005)..................................................... *passim*

*XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*,
874 F. Supp. 2d 263 (S.D.N.Y. 2012)........................................................4, 7, 8, 11

*York-Buffalo Motor Express v. Nat'l Fire & Mar. Ins. Co.*,
294 N.Y. 467 (N.Y. 1945) ...........................................................................6

**Other Authorities**

Fed. R. Civ. P. 65 ...........................................................................................1

Lugano Convention of 16 September 1988 ...................................................15, 16, 18

Plaintiff Eduardo Li submits this reply memorandum of law in further support of his motion, pursuant to Fed. R. Civ. P. 65, for injunctive relief requiring Defendants to immediately pay the costs incurred by Mr. Li in connection with the Underlying Action.[1]

## PRELIMINARY STATEMENT

Defendants' opposition to Mr. Li's motion is more remarkable for what it does not say than for what it says.  Most notably, Defendants have abandoned their reliance on an exclusion that bars claims for "damages" based on RICO (the "RICO Damages Exclusion"), recognizing that it cannot possibly apply where the Underlying Action seeks no "damages" against Mr. Li and thirteen of the fourteen counts against him neither allege nor refer to RICO violations.

Instead, Defendants for the first time assert two entirely new bases to support their denial of coverage in their opposition to this motion, neither of which withstands scrutiny.  First, Defendants claim that the Policy only provides coverage for investigative proceedings, not defense of actions, and that the government's "investigation" terminated with the filing of the original Indictment.  That simply is not what the Policy says.  Rather, the Policy *expressly* covers both defense and investigative costs.  In any event, even if the coverage was limited to investigative costs, the government investigation of Mr. Li is continuing.  In fact, only weeks ago, that continuing investigation led to a Superseding Indictment, naming new defendants and asserting new allegations and counts against Mr. Li.  Even after that Superseding Indictment, the government has publicly stated that its investigation remains ongoing.

Second, Defendants' claim that Mr. Li cannot constitute an Insured Person under the Policy because he did not serve on the FIFA executive committee is directly contradicted by the

---

[1] All capitalized terms used herein have the same meaning as that identified in Plaintiff's Memorandum of Law In Support of His Motion for Preliminary Injunction Requiring Defendants to Pay Defense Costs.

policy language which also extends coverage to members of FIFA standing committees.  There is no dispute that the criminal complaint in the Underlying Action alleges that Mr. Li served on "multiple" FIFA standing committees, and that while a FIFA official, he used his positions within organized football to obtain bribe and kickback payments in connection with the sale of commercial rights to FIFA World Cup qualifying matches.  Those allegations bring Mr. Li's alleged actions within the coverage of the Policy, and Defendants will not be able to avoid coverage on their "Insured Person" defense.

Defendants' contention that Mr. Li has failed to demonstrate irreparable harm because he is covered under an unrelated insurance policy fares no better.  As a matter of fact, the limit of that other policy has already been significantly eroded, is subject to claims brought by multiple defendants, and is likely to be imminently exhausted.  Further, the Defendants ignore the seminal holding in *WorldCom*[2] that an individual defendant seeking a payment of his defense costs under a Directors and Officers Liability policy need not show that he has no other source of payment in order to establish irreparable harm.  Mr. Li filed this preliminary injunction to avoid irreparable harm; he should not be forced to wait until, due to Defendants' recalcitrance, he actually suffers that harm before Defendants are ordered to honor their own contracted-for independent policy obligations.

Further, in a last-ditch effort to indefinitely delay their indisputable Policy obligations, Defendants have resorted to meritless procedural gambits.  Remarkably, Defendants, who removed Mr. Li's filed state court action to this Court, have reversed their position and now contend that this Court has no subject matter jurisdiction because all parties are aliens.  The facts on which they rely for that argument were evident from the time that Mr. Li first filed his

---

[2] *In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005).

original complaint, stating that he was a "citizen of Costa Rica."  Even more remarkably, Defendants contend that despite their sudden "epiphany" that the Court lacks subject matter jurisdiction, it should nonetheless hold that the coverage dispute may not proceed in any American court on *forum non conveniens* grounds.  Neither argument has merit.  This Court has ancillary jurisdiction to decide the questions that relate directly to Mr. Li's right to coverage for the defense of the Underlying Action already pending before the Court.  The exercise of jurisdiction is particularly warranted here.  Mr. Li has already been prejudiced by his loss while Defendants engaged in a removal to this Court.  The exercise of supplemental jurisdiction would prevent further prejudice to Mr. Li, while imposing no prejudice on Defendants, who originally decided to remove Mr. Li's state court action and invoke this Court's jurisdiction.

Further, Defendants' challenges to this forum based on a forum selection clause and common law *forum non conveniens* grounds fail on their merits.  Under Swiss law, which controls the issue, the policy forum selection clause is not binding on Mr. Li, an additional insured who did not expressly agree to that clause.  Nor will the common law *forum non conveniens* standards support denying Mr. Li his choice to bring this coverage action in the very jurisdiction in which the Underlying Action is pending.  That is particularly true given that Mr. Li has now waived extradition, and upon his arrival from Switzerland will likely be confined not just to the United States, but to this District (and possibly to detention), making him unavailable to attend trial or effectively participate in the coverage action if it proceeds anywhere other than this jurisdiction.  In contrast, Defendants are fully capable of proceeding in this Court – and, in fact, frequently bring suit here.

Moreover, Switzerland is not, in reality, an "alternate available forum" for Mr. Li's attempt to obtain the defense he needs now to meet the allegations of the Underlying Action.  A

Swiss lawsuit can be expected to take three to four years, with no effective vehicle for an early interim determination of the defense cost issue.  Moreover, resolution of an insurance coverage action in the Swiss courts threatens inconsistent decisions on key factual issues which will be relevant to both the criminal and civil matters.

Accordingly, for all these reasons, this Court should award a preliminary injunction requiring Defendants to pay Mr. Li's defense costs immediately, and to continue to make contemporaneous payments of Mr. Li's incurred costs on an interim basis, even as they reserve rights to assert potential coverage defenses.

## ARGUMENT

I.   **DEFENDANTS HAVE FAILED TO REBUT MR. LI'S SHOWING THAT HE IS ENTITLED TO ADVANCEMENT OF DEFENSE COSTS**

A.   **The Rapidly-Eroding Federal Policy Does Not Negate Mr. Li's Showing Of The Threat Of Irreparable Harm**

Defendants do not dispute that, as New York federal courts addressing the issue have repeatedly held, "[t]he failure to receive defense costs under a professional liability policy at the time they are incurred constitutes an immediate and direct injury sufficient to satisfy the irreparable harm requirement."  *XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*, 874 F. Supp. 2d 263, 272 (S.D.N.Y. 2012) ("*XL Specialty*") (internal quotation marks omitted); *see also In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005).  Instead, they claim that because they have now "discovered" Mr. Li has another source from which his defense costs can be paid, in the form of a policy issued by an unrelated insurer, Federal Insurance Company ("Federal"), Mr. Li cannot demonstrate that he is faced with irreparable harm if Defendants are not required to comply with their defense payment obligation.  That is incorrect as a matter of fact and law.

4

As a preliminary matter, contrary to Defendants' suggestion, Mr. Li initially disclosed the potential coverage afforded by the Federal policy to Defendants.  Well prior to this lawsuit, criminal defense counsel for Mr. Li wrote a letter to Defendants, expressly disclosing that he had tendered Mr. Li's claims to Federal Insurance Company, which provided potential coverage for the Underlying Action.  Indeed, Mr. Li attached that letter to his original submission on this motion.  *See* Cohen Decl., Ex. E.

Moreover, there is strong reason to conclude that the Federal policy will be exhausted imminently and certainly long before the merits of this coverage claim can be resolved at trial. Thus, even if the existence of that "alternate source" of payment were relevant to the determination of whether Mr. Li faces irreparable harm – which, as set forth below, it is not – the threat of injury "is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Grand River Enter., Six Nations, Ltd. v. Prior*, 481 F.3d 60, 66 (2d Cir. 2007) (cited in Defs. Br. at 16) (internal quotations omitted).

The Federal policy is subject to a $3 million limit and insures not just Mr. Li, but other executives and employees of Central American and Caribbean Association Football ("CONCACAF") who have been named in connection with the Underlying Action.  In the six months since the Indictment was issued, Federal has already paid costs amounting to $1,531,377.05, eroding more than half of Federal's $3 million policy limit, based on claims by just defendants.  Declaration of Burt M. Garson, dated December 15, 2015 ("Garson Decl."), Ex. A.  ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████  Further, in just the last few weeks, seven additional CONCACAF defendants have

been named in the Superseding Indictment.  Garson Decl., Ex. B ¶¶ 30–40.  Three of those

newly named co-defendants have notified Federal of their intention to access the Policy (Garson

Decl. Ex. A), which will substantially increase the "burn rate" for the Policy.

Finally, as a matter of law, the existence of the Federal policy does not alter the fact that

the Defendants' failure to pay defense costs presents Mr. Li with imminent and irreparable harm.

In *WorldCom*, the court specifically rejected the insurer's contention that the insured had failed

to show irreparable injury because he had not demonstrated that he had no access to other

sources of defense payment:

> The issues here surmount whether an individual director has or does not have
> sufficient funds to pay counsel when confronted with litigation stemming from
> service as a corporate director.  In some cases the litigation will be minor; here it
> is massive.  In some cases a director will have great personal wealth; in other
> cases she will not.  The issue here is whether every director protected by a policy
> equivalent to National Union's is entitled to ongoing payment of defense costs
> until there is a judicial determination that that right does not exist.  Under the
> terms of the National Union policy, and for the reasons set forth here, the answer
> is yes.

354 F. Supp. 2d at 470.

Here, as in *WorldCom*, Defendants must discharge their obligation to advance defense

costs to Mr. Li regardless of whether he has sufficient funds from other collateral sources.

Indeed, under longstanding New York Court of Appeals precedent, which Defendants ignore,

they have an independent obligation to fully cover the Underlying Action under the Policy

regardless of any other policy which may provide concurrent coverage, as long as he does not

obtain a double recovery.  *York-Buffalo Motor Express v. Nat'l Fire & Mar. Ins. Co.*, 294 N.Y.

467, 473 (N.Y. 1945).

The right to current defense cost payments is a substantially different right than the mere

right to eventual payment and could be irrevocably lost if not enforced immediately.  Here, the

Policy drafters understood the harm that would befall insured persons if they had to wait out a

6

coverage action before getting their defense costs paid. Indeed, the Policy specifically requires that Defendants pay defense costs based on *allegations* potentially falling within the coverage of the Policy. Cohen Decl., Ex. A § 1.1 (emphasis added). Further, even where the underlying complaint or proceeding alleges conduct that would, if proved, constitute "Willful Misconduct," the Policy requires that Defendants pay defense costs on a current basis, until and unless a court makes a *final, non-appealable* determination that Mr. Li acted willfully with wrongful intent. *Id.* § 3.1.[3] The serendipitous fact that Mr. Li is, for the moment, receiving payments under another policy does not alter that conclusion.

Contrary to Defendants' contention, the unreported decision in *Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 15 Civ. 6639(CM), 2015 U.S. Dist. LEXIS 126611 (S.D.N.Y. Sept. 17, 2015) – the only authority on which they rely on this point – actually supports Mr. Li's request for preliminary injunctive relief here. Defendants quote out of context a single phrase in the *Stuckey* decision stating that "[t]hose cases [*WorldCom* and *XL Specialty*] are not this case [*Stuckey*]." Defs. Br. at 17. They fail to mention, however, that the *reason* the *Stuckey* court distinguished the facts before it from those in *WorldCom* and *XL Specialty*, is that in *Stuckey the insurer had agreed to pay defense costs, though in a lesser amount than the policyholder had requested:*

> [I]n both of those cases, the issue was whether defense costs should be reimbursed, not *in what amount* they should be reimbursed. In *WorldCom,* for example, the insurer claimed that it was under no obligation to advance defense

---

[3] That plain language is in perfect accord with well-established law, which Defendants do not dispute, holding that a defense may be denied "*only* if it could be concluded as a matter of law that there is *no possible factual or legal basis* on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy . . . ." *Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 352 N.E.2d 139, 140 (N.Y. 1976) (emphasis added); *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981) (duty "includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased."); *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 n.15 (Cal. 1966). Defendants have not contradicted these authorities and cite no law to the contrary.

> costs.  In such a situation, an insured might find himself devastated because he would be unable to mount an effective defense, making injunctive relief appropriate.
>
> While this action began because there had been no defense cost reimbursement, that is no longer the case.  National Union has (belatedly) paid what it believes to be reasonable defense costs and has agreed to continue advancing such costs on an ongoing basis.  As a result, the issue confronting this court is not whether defendant is entitled to reimbursement but rather to how much reimbursement does the policy entitle him.  That is a different question altogether.

*Id.* at *21–22 (emphasis in original) (citations omitted).  Further, although it declined to issue a preliminary injunction, significantly, the court in *Stuckey* did in fact order expedited relief – a "quick trial on the merits" which the court scheduled to be held a mere two and a half months after the preliminary injunction was denied.  *Id.* at *1–2.

In short, unlike the facts presented in *Stuckey*, here "those cases" – *WorldCom* and *XL Specialty* – *are* "this case."  As in *XL Specialty* and *WorldCom*, Defendants have disavowed their obligation to contemporaneously pay for the mounting costs of defending against a complex, high-profile criminal case involving counts against Mr. Li arising out of a five-year investigation by multiple government agencies.  As the court recognized in *WorldCom* – and even in *Stuckey* – Mr. Li is entitled to expedited relief to eliminate the imminent risk that the payment of that defense will be interrupted due to Defendants' recalcitrance.

## B.   Defendants' Own Arguments Confirm That Mr. Li Is Likely To Prevail On His Claim For Defense Costs

Far from providing a rationale to deny its advancement obligation, Defendants' Opposition confirms that Mr. Li has met his burden of showing that he is likely to prevail on the merits of his claim for advancement of defense costs.  That is shown, first, in what the Defendants *do not* challenge.  Defendants have now abandoned the argument their denial letter originally posited as their *sole* basis for denying Mr. Li's claim, the RICO Damages Exclusion.  They thus effectively concede that the exclusion is inapplicable where no damages of any kind

are sought from Mr. Li in the underlying action and thirteen of the fourteen claims he currently

faces do not even allege a RICO violation.

Nor do Defendants dispute that the express terms of the Policy establish that they must

contemporaneously pay defense costs based on the allegations of the Indictment, even if they

reserve rights to recoup expenses that fall within policy exclusions.  That conclusion is required

by the Policy's specific provision that Defendants shall pay "defense costs incurred to defend

any actual *or alleged* wrongful acts."  Cohen Decl., Ex. A § 1.1 (emphasis added).  It is further

compelled by the Policy's Willful Misconduct Exclusion, which requires Defendants to pay

defense costs, subject to a right of recoupment, until and unless the court makes a final, non-

appealable determination that Mr. Li acted willfully with wrongful intent.  Cohen Decl., Ex. A §

3.1; s*ee Federal Insurance Co. v. Kozlowski*, 792 N.Y.S.2d 397, 403 (N.Y. App. Div. 2005)

(such language obligates the insurer to make contemporaneous payments of defense costs); *see

generally* Plaintiff's Opening Br. at 10–12.

Wholly unable to dispute these basic principles of policy language and law, Defendants

for the first time raise two entirely new bases to support their denial of coverage in their

opposition to this motion.  Neither of those newly-asserted defenses, however, will support

Defendants' effort to avoid the preliminary relief Mr. Li seeks.  First, Defendants contend that

the Underlying Action is not covered because it does not constitute an "investigative

proceeding."  Defs. Br. at 19.  The Policy, however, is not limited to investigative proceedings.

Rather, it provides that:

> Insurance cover **shall also include defense costs incurred to defend any actual
> *or alleged* wrongful acts and also Investigation costs**, being the reasonable
> fees, costs and expenses incurred by or on behalf of an Insured Person with the
> Underwriters' prior written consent for the principal purpose of preparing for and
> attending an investigation as detailed below . . . .

9

Policy § 1.1 (emphasis added).  In addition, the Policy provides specific coverage for the "reasonable legal fees, costs and expenses" incurred in connection with extradition proceedings. *Id.* § 1.10.

Further, the Policy specifically provides that once "investigative proceedings are initiated . . . the insurer will pay for the costs of the defense of these proceedings."  *Id.* § 2.4.  Here, it is undisputed that investigative proceedings were initiated by the U.S. Attorney's Office, which triggered Defendants' advancement obligation.  Contrary to Defendants' claim, even if coverage were limited to costs incurred in connection with an "investigation," – which it is not – the investigation here did not end with the original Indictment.  Just recently, on November 25, 2015, the U.S. Attorney's Office issued a Superseding Indictment, adding many new co-defendants and counts against Mr. Li.  Indeed, ten of the counts against Mr. Li contained in the Superseding Indictment are based upon an entirely new set of factual allegations.  Garson Decl., Ex. B ¶¶ 231–49, 277–78, 290–91.  The Superseding Indictment asserts five new counts against Mr. Li based upon an alleged scheme – not mentioned in the original indictment – to profit off of scheduling friendly soccer matches.  *Id.* at ¶¶ 277–78, 461–69.  Indeed, the FBI announced after issuing the Superseding Indictment that "[t]his indictment is the latest step in that effort, but our work is not done.  While our investigation continues at home, we also look forward to continuing our collaboration with our international partners, including in particular the Swiss authorities, because there is so much yet to be done."  Garson Decl., Ex. C.

Second, equally unavailing for several reasons is Defendants' contention that the Underlying Action is not covered because Mr. Li did not serve on the FIFA executive committee and because they claim he was not indicted for acts he committed in a managerial or supervisory capacity for FIFA.  Defs. Br. at 20.  The Policy does not require that Mr. Li actually serve on the

FIFA executive committee.  Rather, it extends coverage to FIFA standing committee members,

specifically providing that "For the avoidance of doubt, the definition of Insured Person extends

to include Chairmen and executives and any person acting in a comparable function / capacity of

any FIFA Commission, *standing or ad-hoc committee*."  Cohen Decl., Ex. A § 1.3 (emphasis

added).  Here, the Indictment alleges that "at various times relevant to the Indictment, LI was

also a member of multiple FIFA standing committees, including the players' status committee."

Garson Decl., Ex. B ¶ 34.  Further, the Request for Extradition specifically alleges that "Li, while

a FIFA official, used his positions within organized football to obtain bribe and kickback

payments in connection with the sale of commercial rights to FIFA World Cup qualifying

matches."  Cohen Decl., Ex. D ¶ 5.  Accordingly, because the Underlying Action alleges that Mr.

Li acted as an Insured Person, he is likely to succeed on the merits of his claim that Defendants

must advance him defense costs under the Policy.[4]

## II.   DEFENDANTS' PROCEDURAL MACHINATIONS CANNOT DEFEAT MR. LI'S RIGHT TO RELIEF

Faced with Mr. Li's clear entitlement to the advancement of his defense costs on the

merits, Defendants resort to a variety of procedural gambits in an effort to defeat this motion and

thus delay payment of Mr. Li's defense costs under the Policy.  First, despite the fact that they

chose to remove Mr. Li's state court action to this Court, Defendants now claim that the Court

lacks subject matter jurisdiction over this dispute.  *See* Defs. Br. at 11.  Even worse, Defendants

simultaneously argue that the Court should substantively rule that this matter may not proceed in

the United States under either the Policy's forum selection clause, or the common law principle

---

[4] Defendants do not even mention the balance of equities criterion for entry of preliminary injunctive relief, nor do they challenge in any way the conclusion that, as the court held in *XL Specialty*, the balance of hardships on a motion for preliminary injunctive relief with respect to defense costs "not only decisively but lopsidedly" favors the insured.  874 F. Supp. 2d at 276.

of *forum non conveniens*. *Id.* at 10. Neither of those procedural arguments will justify allowing Defendants to avoid enforcement of their currently existing defense cost payment obligation.

A.    **This Court Can And Should Exercise Supplemental Jurisdiction Over This Action**

Mr. Li respectfully submits that the Court should resolve the jurisdictional "issue" now raised by Defendants by exercising supplemental jurisdiction over this coverage action and hear it in conjunction with the Underlying Action for several reasons. First and foremost, New York federal courts have frequently agreed to exercise supplemental jurisdiction over civil matters related to criminal cases over which they have original jurisdiction. *See Sash v. Schwartz*, No. 04-cv-9634, 2007 WL 30042 (S.D.N.Y. Jan. 4, 2007) (exercising supplemental jurisdiction over criminal defendant's malpractice claim against his former attorney); *Fermin v. Moriarty*, No. 96-cv-3022, 2003 WL 21787351 (S.D.N.Y. Aug. 4, 2003) (recognizing that court could exercise ancillary jurisdiction over legal malpractice case based on defendant attorney's representation of plaintiff in prior federal criminal case, but declining to do so); *United States v. Weissman*, No. 94-cr-760, 1997 WL 334966 (S.D.N.Y. June 16, 1997) (holding that court could and would exercise ancillary jurisdiction over claim by former employee against former employer for reimbursement of legal fees and costs incurred in employee's defense of prior federal criminal case).

Defendants' attempt to distinguish those cases by arguing that they all concern fee disputes directly between criminal defense attorneys and their clients (Defs. Br. at 8, n.8) is incorrect. *Weissman*, for example, involved a dispute regarding whether a former employer was obligated to advance defense costs to its former employee in connection with an underlying criminal action. 1997 WL 334966, at *1–2. The *Weissman* court, before whom the criminal action was pending, agreed to exercise supplemental jurisdiction over the defense costs

advancement dispute as well. *Id.* at *5. Similarly, here, the Court should exercise its supplemental jurisdiction to hear Mr. Li's claims for advancement of his defense costs by the Defendants in conjunction with the criminal action already pending before the Court.

Defendants' reliance on *Stein v. KPMG, LLP*, 486 F.3d 753 (2d Cir. 2007) (Defs. Br. at 8, n.8) is misplaced, as, in fact, the standards set forth in that case actually support the exercise of supplemental jurisdiction here. In *Stein,* the Second Circuit held that a court may exercise supplemental jurisdiction, even over an action involving a non-party to the original proceeding, where "the need for the ancillary proceeding and the efficiencies provided by it [are] sufficiently great to outweigh the prejudice to the non-party and to be consistent with the limited jurisdiction of federal courts." 486 F.3d at 760–61.[5] Here, Defendants' own voluntary decision to originally remove Mr. Li's coverage claim to this Court belies any claim that they would be prejudiced in any way by having that claim heard here. Further, proceeding on the coverage action before this Court provides substantial efficiencies more than adequately supporting this Court's exercise of supplemental jurisdiction. Mr. Li has already endured one disruption of his properly-filed coverage action by Defendants. Whether that disruption was by negligence or design, Defendants should not be rewarded for their actions by yet further delaying resolution of their

---

[5] The cases from outside of the Second Circuit cited by Defendants are not on point. In *United States v. Afremov*, 611 F.3d 970 (8th Cir. 2010), for example, *after the criminal defendant had already pled guilty*, the court determined that the court lacked supplemental jurisdiction over a claim brought against him by a computer forensic analysis for unpaid services. In *United States v. Polishan*, 19 F. Supp. 2d 327, 334 n.6 (M.D. Pa. 1998), the court declined to exercise supplemental jurisdiction over a party who was *neither subject to the criminal proceeding nor had "voluntarily submitted itself to the jurisdiction of this Court*." Here, by contrast, Defendants themselves first invoked the jurisdiction of this Court when they removed Mr. Li's state court action.

obligation to pay Mr. Li's defense and investigation expenses which Mr. Li requires to defend the underlying criminal proceeding in this Court.[6]

### B.   Defendants' *Forum Non Conveniens* Defense Cannot Defeat this Motion

Defendants also cannot avoid this Court's consideration of Mr. Li's request for relief by contending that they intend to file a motion to dismiss on *forum non conveniens* grounds (Defs. Br. at 16) for two key reasons.  First, Defendants have failed to distinguish – or even address – those authorities holding that a stated intention to bring a motion challenging the New York forum will not warrant denial of preliminary injunctive relief.[7]  Second, as set forth below, any such motion will fail on its merits, whether it is based on the Policy's forum/court selection clause or on common law principles of *forum non conveniens*.  Accordingly, Defendants' forum arguments provide no basis for denying Mr. Li the defense costs to which he is entitled.

### 1.   The Policy Forum Selection Clause Is Not Binding On Mr. Li

In arguing that the Policy's forum selection clause encompasses Mr. Li's coverage claims, Defendants ignore that the Second Circuit has held that that question is to be determined by the law chosen by the parties to govern the contract.  In particular, in *Martinez v. Bloomberg LP*, the court held that "if we are called upon to determine whether a particular forum selection clause is mandatory or permissive, or *whether its scope encompasses* the claims or *parties involved in a certain suit*, we apply the law contractually selected by the parties."  740 F.3d 211,

---

[6] Alternatively, should this action be remanded, at the very least, Mr. Li should be awarded attorneys' fees incurred in connection with Defendants' removal and the subsequent remand to state court.

[7] *See N.Y. Land Co. v. Republic of Philippines*, 634 F. Supp. 279, 289 (S.D.N.Y. 1986) (preliminary injunction granted despite defendant's contention that its *forum non conveniens* defense would "ultimately" require dismissal: "The likelihood of dismissal based on *forum non conveniens* is not sufficiently high to justify denying preliminary restraints necessary for plaintiff's protection."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988) ("On the present record the district court did not abuse its discretion in refusing to dismiss the Republic's action on *forum non conveniens* grounds before issuing the preliminary injunction.").

218 (2d Cir. 2014) (emphasis added) (citations omitted).[8]  Under that holding, Swiss law governs

the question of whether the forum selection clause encompasses Mr. Li's claims – and under

Swiss law, the answer is that it does not.

Defendants correctly note that Switzerland has subscribed to the Lugano Convention of

16 September 1988 on jurisdiction and the recognition and enforcement of judgments in civil and

commercial matters, and its 2007 amendment, (the "Lugano Convention"), and that the

Convention will govern the question at issue under Swiss law.  However, they cite to the wrong

provision of the Convention for their analysis of Swiss law on the issues presented here.[9]  Article

23 of the Convention, on which Defendants rely, is applicable to "garden variety" commercial

contracts, which do not include insurance contracts.  Brand Decl., ¶ 16.

In fact, the Lugano Convention contains special rules for jurisdiction regarding contracts

of insurance.  Brand Decl., ¶ 16, Ex. 2.  Under those rules and interpretive case law, all of which

were in effect well prior to the negotiation and issuance of the Policy, the choice of law clause in

the Policy providing that "a Swiss place of Jurisdiction and the application of Swiss Law shall be

deemed to be agreed," must be interpreted to extend only to an "agreement" between FIFA and

Lloyd's, and does not extend to an insured, such as Mr. Li, who was not a signatory to the

Policy.  Brand Decl., ¶ 30.[10]

---

[8] Instead, Defendants argue in a footnote that "only the Seventh and Tenth Circuits address the validity of a forum selection clause based on the law of the jurisdiction specified in the contract's choice of law provision," without mention of or citation to *Martinez*.  Defs Br. at 13.

[9] Notably, Defendants do not submit any expert analysis or support for their interpretation of Swiss law, despite the fact that written and oral testimony from experts remains the "basic mode of proving foreign law."  *Bigio v. Coca–Cola Co.*, No. 97 CIV. 2858, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012).  In contrast, Mr. Li submits herewith the expert Declaration of Professor Ronald A. Brand (the "Brand Declaration") with respect to the proper interpretation of whether Swiss law would permit enforcement of the forum selection clause on Mr. Li.

[10] Indeed, the forum/court selection clause may not even be binding on FIFA.  Under the Lugano Convention, if both the policyholder and the insurer were domiciled in Switzerland, they would be allowed to enter into a choice of court agreement choosing the courts of Switzerland, which would bind

That conclusion is compelled not only by the terms of the Lugano Convention itself, but by the earlier Brussels I Convention (now known as the Brussels Regulation) on which it is based, and by the decisions of the European Court of Justice ("ECJ") interpreting that earlier convention.  The Brussels I Convention and Lugano Convention have identical provisions governing forum selection clauses in insurance contracts.  *Compare* Brand Decl., Ex. 2 (Lugano Convention), Article 13, *with* Brand Decl., Ex. 3 (Brussels I Convention), Article 15.  Further, Defendants' failure to address the relevant ECJ cases is particularly critical because Protocol 2 of the Lugano Convention provides that, in interpreting its provisions, regard is to be given to the interpretation of the Brussels I Convention by the ECJ.  Brand Decl., ¶ 22.  Significantly, in *Société Financière et Industrielle du Peloux v. Axa Belgium, et al.*, ECJ Case No. C-112/03, ECR I-3707 (2005) ("*SFIP*"), annexed hereto as Brand Decl. Ex. 4, the ECJ held that a forum selection clause did not apply to the coverage claims of a co-insured who had not specifically and separately agreed to the clause.

In *SFIP*, the insurer argued that a choice of court clause was applicable to the coverage claims of a co-insured under the policy.  Despite recognizing that the clause would be applicable to coverage claims brought by the named insured, the ECJ held that the clause did not apply to the claims of the co-insured that had not specifically agreed to that jurisdiction provision.  In so holding, the Court repeatedly emphasized the importance of protecting the insured's right to sue in its own domicile and of not allowing choice of court agreements to be interpreted for the sole benefit of the insurer.  *SFIP* ¶¶ 28–44.  It also noted that "derogations from the jurisdictional rules in matters of insurance must be interpreted strictly."  *SFIP* ¶ 31; Brand Decl., ¶ 23.

---

those parties.  In the current matter, however, FIFA is a Swiss entity but Defendants are domiciled in London, England.  Brand Decl., ¶¶ 19–20.

Three aspects of the ECJ's holding in the *SFIP* case are especially important here.  **First,** the holding confirms the requirement of consent to the choice of court agreement by the party against whom application of the agreement is sought.  *SFIP* ¶ 43.  This is consistent with the doctrine of separability, which is well-settled in international and European law,[11] and provides that choice-of-forum clauses, whether selecting courts or arbitration, are separable from the rest of the contract for purposes of determining party consent to the clause.  Thus, the fact that a party seeks to assert rights under other portions of the contract does not, under Swiss law, require or mean that they have agreed to be bound or otherwise fall within the scope of the forum/court selection clause.[12]  Brand Decl., ¶ 24.

The ECJ's confirmation of the consent requirement in *SFIP* is also consistent with general European law confirming the importance of knowing and adequate consent to choice of court agreements.  *Estasis Salotti di Colzani Aimo et Gianmario Colzani v Rüwa Polstereimaschinen GmbH.*, ECJ Case No. 24-76, ECR 1831 (1976); Brand Decl., Ex. 6, ¶ 7 (As consent requirement is "strictly construed," it "must be clearly and precisely demonstrated" by the party seeking application of the choice of court clause "was in fact the subject of a consensus between the parties.").  Thus, a choice of court clause will be binding on a non-signatory only when the party seeking its application demonstrates that the non-signatory succeeded by

---

[11]  *See, e.g.*, *Deutsche Bank AG & ORS v. Asia Pacific Broadband Wireless Communications Inc. & ANR*, [2008] EWCA Civ. 1091 (U.K. Court of Appeal) (allowing, under Article 23 of the Brussels I Regulation, a party to amend its complaint to allege the failure to conclude the underlying contract while at the same time relying on that contract's exclusive choice of forum clause) (attached as Brand Decl., Ex. 5).

[12]  Defendants' citation to *dicta* in an unpublished district court decision addressing whether non-signatories should be estopped from disclaiming forum limitations in contract while enjoying benefits flowing directly from the same contract (Defs. Br. at 13, citing *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC*, 2012 U.S. Dist. LEXIS 21739 (S.D.N.Y. 2012)) is thus inapt.  In any event, the Second Circuit has never endorsed that theory.  To the contrary, subsequent to the *dicta* cited by Defendants, the Second Circuit expressly held that it had not reached, and would not reach, the question of whether a signatory may enforce a forum selection clause against a non-signatory.  *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013).

operation of law to the rights and obligations of the signatory or that the non-signatory "actually accepted the choice of court clause relied on against him." *Coreck Maritime GmbH v Handelsveem BV and Others*, ECJ Case No. C-387/98, ECR I-9337 (2000) ¶¶ 23, 26–27.  Brand Decl., ¶ 25, Ex. 7.  Accordingly, one policyholder, such as FIFA, cannot waive on behalf of a co-insured, such as Mr. Li, the right to access to an available forum of its choice.  To the contrary, the Convention protects the co-insured both by keeping the benefits of the policy available to him and by preventing him from being subject to choice of court agreements to which he is not directly a party.  Brand Decl., ¶ 26.[13]

**Second,** the ECJ's holding in *SFIP* plainly and clearly affirms that Section 3 of the Brussels I Regulation (which is repeated virtually verbatim in Section 3 of the Lugano Convention) was intended to protect insureds.  Thus, the ECJ made it abundantly clear that an insured must be permitted to file suit in the courts of its own country, must not be discouraged from suing by being compelled to file suit in the courts of the insurer's domicile, and that choice of court agreements must not be interpreted for the sole benefit of the insurer.  *SFIP* ¶¶ 30, 33, 38–41.  Brand Decl., ¶ 27.  Under *SFIP*, a co-insured not involved in the negotiation or placement of the policy is necessarily the "weaker party," and is covered by the protective principle underlying Section 3 of Title II of the Lugano Convention, that weaker parties in the insurance relationship must be protected.  Brand Decl., ¶ 28.

---

[13] Defendants' reliance on the unpublished district court decision, *Citi Structure Constr. v. Zurich Am. Ins. Co.*, 2015 U.S. Dist. LEXIS 108985 (S.D.N.Y. Aug. 18, 2015) is thus misplaced, as the issue before the court was whether a closely-related non-signatory had standing to enforce a forum selection clause against a signatory to a contract.  Further, although *Citi Structure* held that the non-signatory did have standing to enforce the clause because it was "closely related" to a signatory, in *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6 (E.D.N.Y. 2014), the court held that a non-signatory could not itself be bound by such a clause unless it was actually involved in the execution of the contract itself.

**Third,** the *SFIP* holding does not allow a denial of the benefits of the policy to a party who is not bound by the choice of court agreement between the insurer and the policyholder. The ECJ in no way indicated that the protection of weaker parties from certain types of choice of court agreements would carry with it any loss of the protections provided in the remainder of the policy agreement. Brand Decl., ¶ 29.

Notably, in the only United States case that research has disclosed dealing with this issue, *Baxter Int'l v. AXA Versicherung AG*, 908 F. Supp.2d 920-21 (N.D. Ill. 2012), the federal court specifically relied on Professor Brand's opinion regarding "the binding ECJ decision in *SFIP*" in holding that an insurance policy's forum selection clause selecting Cologne, Germany did not bind an additional insured which was not itself a party to the insurance contract. *Id.* at 925. Accordingly, the court denied the German insurer's motion to dismiss the additional insured's insurance coverage action based on that clause and *forum non conveniens* grounds. *Id.* at 926.

The principles behind Section 3, as applied by the ECJ in *SFIP*, thus preclude application of the choice of forum/court clause in the Policy to Mr. Li, a "weaker party" in the transaction who did not agree to the clause, and who cannot be deemed to have agreed to the clause simply because he seeks coverage under the Policy. Brand Decl., ¶ 30. Accordingly, Mr. Li does not fall within the scope of the "agreed" forum selection clause under the Swiss law applicable at the time the Policy was issued, and Mr. Li's motion for an injunction should not be denied based on Defendants' claim that he improperly filed this lawsuit in New York.

## 2. Mr. Li's Motion Should Not Be Denied Based on Common Law *Forum Non Conveniens*

Finally, Defendants' intent to file a motion to dismiss on common law *forum non conveniens* grounds will not support their effort to avoid the injunction Mr. Li seeks. As the Second Circuit held in *Iragorri v. United Technologies Corp.*, "a court reviewing a motion to

19

dismiss for *forum non conveniens* should begin with the assumption that the plaintiff's choice of forum will stand" unless the defendant meets the burden of demonstrating, *inter alia*, that "trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." 274 F.3d 65, 71 (2d Cir. 2001) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n.23 (1981)); *see also In re Cinar Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 296–97, 301–02 (E.D.N.Y. 2002) (Dearie, J.) (denying *forum non conveniens* motion by defendants Canadian corporation and officers and directors where they failed to overcome presumption and show that weight of factors pointed in their favor).

Here, Defendants cannot overcome this presumption. As an initial matter, even under the Defendants' own depiction of the facts, Switzerland is not, in fact, an available alternate forum for the effective resolution of this dispute. Defendants claim that the average time for resolution of a contractual dispute in Swiss courts is 368 days. Given that the Underlying Action is proceeding apace and may well be resolved long before that time, even if Defendants' statement were an accurate estimate of the time it will take to resolve the coverage dispute in Switzerland, it would virtually ensure that Mr. Li's right to a contemporaneous defense cannot be resolved until long after he has already since suffered the harm from its lack.

But, in fact, Defendants' depiction woefully understates Mr. Li's inability to receive a timely resolution of his coverage claim in Switzerland. As set forth in the accompanying Declaration of Andreas Fankhauser, dated December 15, 2015 ("Fankhauser Decl.") an attorney regularly engaged in commercial litigation in the Swiss courts, "complex actions" such as coverage claims like those at issue could easily take three or four years to resolve. Fankhauser Decl., ¶¶ 3, 7–10. More importantly, it would not be possible for an insured to seek preliminary relief with respect to the payment of defense costs prior to the resolution of the action.

Fankhauser Decl., ¶ 11.  Accordingly, Mr. Li would have no ability in a Swiss action to effectuate his right to the *contemporaneous* payment of his costs as they are incurred.  *Id.*

In contrast, this forum not only provides the ability to obtain such relief, but it already has a close relationship to the coverage dispute, as it is the very county where the underlying indictment was filed, the extradition request was issued, and the underlying criminal action will be heard.  Courts in the Second Circuit typically deny motions to dismiss on forum *non conveniens* grounds where the underlying or related dispute arises in New York.[14]

That is particularly true here, as the underlying action at issue will not merely be heard in this jurisdiction, but it will be heard by the very judge and Court to which Defendants have removed this action.  This Court will thus have a unique familiarity with the underlying issues that Defendants claim may relate to Mr. Li's right to coverage.  For example, Defendants have raised the Policy's willful misconduct exclusion to the extent that there is a conclusive and final decision made by this Court in the criminal action that Mr. Li directly acted in willful breach of his duty with wrongful intent, which is required under the Policy.  Further, another coverage issue raised by Defendants – Li's role and relationship with FIFA – is likely to be resolved in the criminal case.  Defendants' position would require the parties to litigate in Switzerland the same issues already pending before this Court in the criminal case, leading not only to duplicative proceedings but to the very real possibility of conflicting and inconsistent results.

---

[14] *See, e.g.*, *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 674–75 (S.D.N.Y. 1997) (rejecting Citibank's motion to dismiss for *forum non conveniens* in favor of the United Kingdom instead of New York, even though United Kingdom provided an adequate alternative forum, because New York was the site of the trust property at issue and because plaintiffs, representatives of Lloyd's underwriting syndicates, "unequivocally" preferred a New York forum); *Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*, 282 F.R.D. 54, 61, 70 (S.D.N.Y. 2012) (foreign insurer's third-party claims against nonresident broker should not be transferred to Switzerland where there was substantial connection between insurer's claims against broker and the main action involving New York policyholders' class action lawsuit against insurer brought in New York).

Finally, by issuing the Policy which agrees to insure "Insured Persons" "world-wide" without excluding the United States or New York, Defendants should have reasonably anticipated the likelihood that a claim could be made against insured persons in New York.  Indeed, Defendants cannot credibly claim that maintaining this lawsuit in New York is either inconvenient or unfair as they frequently bring lawsuits against their policyholders and others in New York.  *See, e.g.*, *QBE Ins. Corp. v. Pub. Serv. Mut. Ins. Co.*, 102 A.D.3d 442 (1st Dep't 2013); *Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*, No. 13 Civ. 742(DLC), 2014 WL 1378127 (S.D.N.Y. Apr. 8, 2014); *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, No. 14-CV-04717(FB)(CLP), 2015 WL 1182764 (E.D.N.Y. Mar. 13, 2015). Accordingly, because Defendants' *forum non conveniens* arguments are highly unlikely to succeed, they do not warrant denying Mr. Li injunctive relief.

While all of these factors would have barred a *forum non conveniens* dismissal even while Mr. Li was in the process of challenging the order of extradition, with his agreement to withdraw that challenge, they carry even more weight.  Once extradited to the United States, Mr. Li will no longer be able to personally participate in a coverage action in Switzerland.  In particular, he will not be able to appear there for deposition or trial.  In contrast, he will be able to attend and fully participate in the proceedings in this Court, including proceedings relating to his coverage claim.  That fact makes this Court not only "a" convenient forum for the resolution of that claim, but perhaps the *only* convenient forum for that claim, and requires that Mr. Li's choice of forum be upheld.

## CONCLUSION

For all the foregoing reasons, the reasons set forth in Mr. Li's moving brief, and the authorities cited in their support, Mr. Li respectfully requests that this Court to grant his motion for a preliminary injunction requiring Defendants to immediately pay Mr. Li's defense costs in connection with the Underlying Action as required by the Policy.

Dated:   New York, New York
   December 15, 2015

Respectfully submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: /s/ Robin L. Cohen_____
Robin L. Cohen (rcohen@kasowitz.com)
Burt M. Garson (bgarson@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1770

*Attorneys for Plaintiff*

23